**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| TINA RICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-0473-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Tina Rich ("Rich") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Rich applied for DIB on May 21, 2002, alleging an onset date of January 1, 2002. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on December 23, 2003. Rich was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Rich testified. The record was held open to receive additional evidence. After additional medical evidence was submitted, a supplemental hearing was held on June 18, 2004. Rich, two medical experts, and a vocational expert testified.

The ALJ denied Rich's application on December 10, 2004. On February 4, 2005, the Appeals Council denied Rich's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over Rich's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Rich met the disability insured status requirements of the Act at all times relevant to the ALJ's decision; (2) Rich had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) the medical evidence established that Rich had "severe" impairments, consisting of the

residuals of a brain tumor; (4) Rich did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4; (5) Rich retained the residual functional capacity ("RFC") to perform unskilled simple and repetitive light exertional work with no work at dangerous heights or in close proximity to dangerous machinery; (6) Rich's allegations of pain, other symptoms, and functional limitations were not entirely credible; (7) Rich was unable to perform her past relevant work; (8) Rich was a younger individual with a college education and no transferable work skills; (9) based on an exertional capacity for light work, and Rich's age, education and work experience, Medical-Vocational Rule 202.21 would direct a conclusion of "not disabled;" and (10) although Rich's limitations did not allow her to perform the full range of light work, using Rule 202. 21 as a framework for decision making, there were a significant number of jobs in the State of Indiana which she could perform, including 2,690 light cafeteria attendant jobs; 5,492 light janitor and cleaner jobs; 6,929 light maid and houseman jobs; 1,025 light usher and lobby attendant jobs; 925 light miscellaneous entertainment jobs; 1,230 sedentary security guard and gambling surveillance officer jobs; 243 sedentary credit authorizers, checkers, and clerk jobs; 355 sedentary correspondence and order clerk jobs; and 1,878 sedentary receptionist and information clerk jobs. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Rich had not been disabled within the meaning of the Act at any time relevant to the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

2

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.  Analysis

The ALJ determined that although Rich had severe impairments consisting of residuals of a brain tumor, she could perform a significant number of light and sedentary jobs. Rich argues that the ALJ's decision is not supported by substantial evidence. More specifically, Rich contends that the ALJ erred in rejecting the opinion of the testifying medical expert who opined that she satisfied the requirements of a Listing.

The ALJ acknowledged that medical expert Dr. Smith testified that Rich met the benign brain tumor Listing. (Listing 11.05, 11.04B). (R. at 12.). Listing 11.04B requires:

> Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

Listing 11.04B, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

During the ALJ's examination of Dr. Smith, he did not ask whether Rich met any Listing. (R. at 340-343). It was on cross-examination by counsel that Dr. Smith opined that Rich met or equaled Listing 11.04B. (R. at 345). Immediately after Dr. Smith opined that Rich met the Listing, the ALJ indicated that he had no more questions for Dr. Smith. *Id.* He did not question at all Dr. Smith's conclusion or the basis therefor.

In his decision, the ALJ stated without citation to the record and without any supporting medical source opinion that there was no evidence of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. (R. at 12). The ALJ rejected Dr. Smith's opinion because he interpreted her testimony as a statement of "her belief that because the claimant's type of brain tumor was identified in the listings, . . . then the diagnosis means that she meets the listing and still does meet the listing." *Id.* The ALJ then concluded that "Dr. Smith's belief is not consistent with the regulations, and cannot be given significant weight." *Id.* It is not clear from Dr. Smith's testimony, however, that she did, in fact, base her opinion solely on a particular diagnosis with no consideration of the elements of the Listing. Her testimony did not elaborate either way.  All that is clear is that she believed Rich's impairment satisfied the Listing. The ALJ rejected Dr. Smith's opinion based on *his* own unsupported assessment of her opinion. "An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

3

The ALJ further reasoned that the physicians employed by the State Disability Determination Services did not find that Rich met or equaled any Listing. (R. at 12). The ALJ stated that the State Agency physicians "are extremely knowledgeable in the Social Security Administration's disability program." *Id.* There is no indication, however, that Dr. Smith, an expert called to testify by the Social Security Administration, was anything but knowledgeable about the Social Security disability program as well. Any implicit finding as to Dr. Smith's lack of knowledge or expertise is not supported by the record.

Rich argues that the State Agency physicians did not issue any opinion as to whether Rich met Listing 11.05/11.04B. This is true. The Commissioner counters that the State Agency physicians "implicitly" found that Rich's impairments did not meet or equal a Listing when they completed the RFC assessment, because the RFC evaluation is not assessed until step three of the analytical process, after it is determined that a Listing is not satisfied. In the face of the medical expert opinion that Rich satisfied a Listing, however, the court cannot find that the *lack of a finding* by a State Agency physician constitutes substantial evidence. The RFC forms completed by the State Agency physicians did not inquire about Listings and the State Agency physicians gave no opinion on that issue. (R. at 194-201, 236-242). Absent contradictory evidence, the ALJ's conclusion that Rich did not meet or equal a Listing is not supported by substantial evidence.

In addition, the ALJ misrepresented Dr. Smith's testimony as to Rich's headaches and fatigue, two very significant symptoms. The ALJ stated that "the medical expert testified unequivocally that there is no medical etiology in the record that explains either the fatigue or the headaches." (R. at 15). The ALJ further noted that "[a]s mentioned above, Dr. Smith testified that there is no medical cause, etiology, or source for the claimant's symptoms or debilitating fatigue and headaches. This testimony is critical since it has a profound influence on the weight that can be given to the subjective complaints made by the claimant in this regard." *Id.* Dr. Smith did *not* testify that there was no medical cause for Rich's headaches and fatigue. Rather, when asked about the source of the headaches, Dr. Smith stated as follows:

> I don't think you can diagnose why people have a headache very often. She has a deficit in her brain where the surgery site was. She has some tissue changes in the brain from radiation. There is obviously some scarring around the durals (phonetic) and blood vessels where the surgery took place. So, there would be many reasons organically why she would have headaches.

(R. at 341-42).

Dr. Smith acknowledged that headaches alleged by Rich as lasting up to two to three hours "would not surprise me." (R. at 344). She also testified that it would be "reasonable" that something like reading or something requiring a little more intense concentration might trigger a headache. *Id.* In sum, Dr. Smith testified that there were many possible organic causes for Rich's headaches. The ALJ's conclusion otherwise is baseless.

4

With regard to fatigue, Dr. Smith stated that Rich had "several possible etiologies of fatigue. Depression, organic brain syndrome, medication, medications for seizures, medications for headaches sometimes will cause fatigue. And as mentioned at this time, her thyroid values were a little low and hypothyroidism is characteristically causing, is characteristically a cause of fatigue." (R. at 343). Dr. Smith also added:

> One of the reasons I would consider her fatigue as part of her organic disorder is simply because she wakes up in the morning refreshed. Fatigue that's usually purely emotional, people do not wake up refreshed. So the fact that she wakes up and the fatigue comes on later in the day is more likely to be an organic etiology.

(R. at 344-45).

Accordingly, the ALJ's evaluation of Dr. Smith's testimony is not supported by substantial evidence. The ALJ's appraisal of Rich's subjective complaints was also tainted by his unsupported analysis of her headaches and fatigue. Although an ALJ's credibility determination is generally entitled to deference, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). *See also Carradine v. Barnhart,* 360 F.3d 751, 754 (7th Cir.2004) (noting that remand is appropriate when the ALJ "based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness").

### III.  CONCLUSION

An ALJ's "decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 05/11/2006

*[signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana